THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID R. PURDLE, Defendant-Appellant.

Third District   No. 3—89—0824

Opinion filed April 19, 1991.—Rehearing denied May 30, 1991.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

After a jury trial in the circuit court of Peoria County, defendant David Purdle was found guilty of the June 4, 1989, murder of Mark Cross. He was sentenced to serve 30 years in the Department of Corrections. Defendant appeals from his conviction on grounds that the State's evidence was insufficient to prove him guilty of first degree murder beyond a reasonable doubt; that he was deprived of his constitutional right to a fair trial because of misstatements made by the prosecutor in closing argument; that he was denied his right to effective assistance of counsel; and that this court should exercise its discretionary power to reduce defendant's conviction to second degree murder. We affirm.

Evidence admitted at trial established that defendant was residing in a drug treatment center on June 3, 1989. On that date, he left the center on a pass and went to visit JoAnne Smith, the mother of defendant's infant son. Smith, her daughter and the baby were living in an apartment in the Harrison Homes complex in Peoria with Mark Cross. She was pregnant with Cross' baby. Purdle spent the afternoon with Smith visiting relatives and taking photographs.

That evening, defendant, his aunt, his sister and Smith went out for drinks and to play pool. Later, a friend, Louis T. Henning, drove them to the Pack-Um Inn Tavern. Defendant and his sister got out of the car as Mark Cross came out of the tavern and approached the car. Cross asked about JoAnne, and defendant told him to stay away from the car. Henning moved the car and its passengers while defendant and Cross engaged in a fist fight in the parking lot. Witnesses who testified about the fight agreed that Cross had instigated the confrontation, that defendant won and that he released Cross when Cross agreed to give up.

After midnight, defendant proceeded with his friends to Smith's apartment. Shortly after they arrived, Cross showed up with a knife in his hand. This time, defendant refused to fight and retreated to his mother's home, a short distance away. Smith called the police to report the incident. Defendant returned to Smith's while the police were at the scene and asked them to arrest Cross for his provocations. The police told defendant to stay inside the apartment with Smith and to call the police if they had any more trouble from Cross.

A short time later, Cross returned to Smith's apartment and demanded that defendant, Smith or both come outside or let him in. Cross continued yelling for several minutes, alternately at the front door and at the front window, calling names and/or threatening the occupants and demanding a further confrontation. The eye witnesses differed in their testimony as to whether Cross had a small knife in his hand on this occasion. In any event, defendant finally took a butcher knife from Smith's kitchen and went outside.

The two men left the porch to Smith's apartment and fought in the playground area adjacent to the apartment. The men swung at each other and then Cross went down on his knees. According to defendant, Cross got up and said that one of them was going to die and that he, Cross, was not afraid to die. Defendant testified that when he turned to leave Cross charged at him. Then, according to defendant, he turned around and the knife in his hand sank into Cross, and Cross fell. Defendant ran into Smith's apartment and then left the area through her back door. By contrast, the State's star witness, Giella Davis, who watched the confrontation from when Cross was yelling at Smith's door until defendant left the playground, testified that the two men continued the fight until defendant thrust his knife into Cross' midsection and he fell to the ground.

The police were summoned by a neighbor of Smith (Smith's apartment did not have a telephone), and several onlookers, including Cross' sister, approached Cross, who lay in a pool of blood. Cross was

removed by ambulance and taken to the hospital where he died several hours later from loss of blood.

The police searched the scene, but were unable to locate any knives used by either Cross or defendant that night. Defendant testified that he had dropped his butcher knife after Cross fell the last time, but none of the witnesses could explain the disappearance of the knives. The arresting officer testified that defendant was picked up a few blocks from the crime scene. Initially, he denied any connection to the incident, but later told the police about the earlier confrontation at the Pack-Um Inn and said that he had left Smith's apartment by the back door when Cross appeared at the front and began yelling at them.

Photographs of defendant taken shortly after his arrest were admitted into evidence to show that defendant suffered only a few scrapes and abrasions to his left hand.

During the conference on jury instructions, the court suggested the second degree murder instruction, but defendant declined, preferring to rest on his theory of self-defense rather than offering the jury an opportunity to compromise with a guilty verdict on the lesser offense. The prosecutor then offered a second degree murder instruction of its own, but this was refused by the court based on defendant's election. After closing arguments, the jury deliberated and returned its verdict finding defendant guilty of first degree murder as charged.

Defendant's motion for a new trial was heard and denied, defendant was sentenced as aforesaid, and this appeal ensued.

For his first issue, defendant challenges the sufficiency of the State's evidence to rebut the affirmative defense of self-defense. At trial, defendant presented the theory that the victim, Mark Cross, was the initial aggressor; that defendant had no duty to retreat when Cross provoked him from outside of Smith's apartment; and that the fatal stab wound received by Cross was either accidental or self-defense in response to a surprise attack. On appeal defendant argues that he need only have subjectively believed that he was in danger of suffering great bodily injury or death in order to prevail on his self-defense theory.

■■ ■ While defendant correctly states the law in general, it is not our role to reweigh the evidence received by the jury, but rather to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Based on that standard, we have no hesitation in affirming the jury's determination that the State

met its burden of proving that defendant was not legally justified in killing Cross. There was ample testimony that defendant was the aggressor· when he left Smith's apartment with butcher knife in hand and throughout the confrontation outside.

The jury did not have to believe defendant's account of the incident. When defendant left the apartment to confront Cross, the jury could reasonably conclude based on the evidence admitted at trial and reasonable inferences that defendant did not intend to discuss the matter and did not reasonably believe there was a need to defend himself or fend off an attack upon himself or Smith, but that he intended to cause great bodily harm or death to Cross. At best, Cross was bullying and offensive and armed with a small knife—one that merely scratched or scraped defendant, but neither punctured him nor threatened his life. By contrast, defendant armed himself with a weapon fully capable of killing a man with a single, well-placed thrust. Based on our review of the record on appeal, the jury's determination of guilt was not unreasonable. Accordingly, we reject defendant's challenge to the sufficiency of the State's evidence.

■ Defendant next contends that misstatements of law made by the prosecutor during closing argument concerning the justifiable use of force deprived him of a fair trial. Defendant argues that the prosecutor improperly stated that defendant became the aggressor the moment he came out of the apartment and that he could just have gone out the back door and avoided any further confrontation with Cross. Significantly, there was no objection to the argument either at trial or in defendant's post-trial motion; thus the error, if any, was waived.

■ ■ Defendant presses the issue under the plain error doctrine. From our review of the record, however, we find that the prosecutor's closing argument viewed in its entirety, even to the extent that it may have overstated the State's case, was not so inflammatory as to deny defendant his right to a fair trial. Moreover, the jury was properly instructed by the court on the law of justifiable use of force (Illinois Pattern Jury Instructions, Criminal, No. 24—25.06 (2d ed. 1981) (hereinafter IPI Criminal 2d)) and further instructed that "[n]either opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded." (IPI Criminal 2d No. 1.03.) The court's instructions carry great weight with a jury and may cure a prosecutor's misstatements of law, particularly where, as here, the alleged misstatements are not emphasized or repeated. Under these circumstances, we find no plain error in the prosecutor's closing argument. See *People v. Lawler* (1991), 142 Ill. 2d 548, 564 (court ruled

that prosecutor in closing argument had "clearly misstated the law"; however, reversible error not committed because of "curative effect" of jury instructions).

Defendant next contends that he was denied a fair trial because his attorney failed to subpoena witnesses who could have corroborated defendant's theory of self-defense and because he failed to object to the prosecutor's misstatements of law during closing arguments. The trial court held an exhaustive hearing with respect to defendant's allegation that he was entitled to a new trial on the ground of new evidence, i.e., the witnesses who would have corroborated defendant's version of the events of June 4 and 5, 1989. The court's conclusion merits reciting:

"I don't know why all of this material wasn't brought forward at trial. Certainly there was no impropriety on the part of the State that led to this. Nor does it appear that the defense was inadequate in any way. Some people just didn't seem to want to testify. But primarily, from what I've heard, there really isn't anything on which to base a motion for new trial, even though some people have now come forward with additional evidence.

There's a lot of confusion about this case because there were a lot of people involved, and recollections aren't always identical and precise. But the basic case that even new witnesses have testified to is not word for word but the same case that I heard during the trial. Now, I'm not saying I would have excluded these people because they're cumulative, but basically they don't throw any new light on the trial. *** It may be new evidence in a general term, but it is not the type of new evidence that calls for granting a new trial. This case was thoroughly tried. The defendant's theory was thoroughly presented to the jury, and the jury has rendered its verdict, and therefore, *** the motion for new trial as ultimately amended is hereby denied."

■ Although not presented in the trial court as an issue of ineffective assistance of counsel, it is apparent from the foregoing that the trial court considered whether the additional testimony could have changed the outcome of the trial. We agree with the trial court that it could not. The additional witnesses were, for the most part, defendant's relatives and family friends. Their testimonies in some respects corroborated that of defendant, but in other significant respects, they supported the State's case. We cannot, under the circumstances, say that counsel was ineffective for failing to produce them at trial. And,

for reasons stated above, the alleged misstatements of law made during the prosecutor's closing argument could not have changed the outcome of defendant's trial; thus, we do not find counsel's representation ineffective for his failure to object during the prosecutor's closing argument.

■ Lastly, we agree with the State that the current statutory scheme for homicide does not readily lend itself to reductions in degree by this court from murder in the first degree to murder in the second based on an imperfect self-defense (unreasonable belief that lethal force is justified). While there was certainly *some* evidence of defendant's unreasonable belief, we do not find that such evidence clearly outweighed the State's evidence indicating that no such mitigating factor existed at the time of the killing. Accordingly, we will not disturb the judgment of conviction as entered by the circuit court of Peoria County.

The judgment of the circuit court is affirmed.

Affirmed.

GORMAN and SLATER, JJ., concur.