**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240596-U

Order filed October 28, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0596 Circuit No. 21-CF-444 |
| TERRY BROWN, | ) ) ) | Honorable William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Davenport and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  (1) The evidence was sufficient to sustain the defendant's first degree murder conviction. (2) The court erred in failing to conduct a preliminary *Krankel* inquiry.

¶ 2        The defendant, Terry Brown, appeals from his conviction for first degree murder. The defendant argues (1) the State failed to disprove beyond a reasonable doubt that the defendant acted in self-defense, or in the alternative, the defendant's conviction should be reduced to second degree murder, and (2) the court failed to conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984).

I. BACKGROUND

¶ 4 The defendant was charged with first degree murder (720 ILCS 5/9-1(a)(1) (West 2020)), for the murder of Anthony Gray. The defendant's bench trial began on January 16, 2024. Erie Johnson testified that she rented a three-bedroom house in Kankakee. Johnson rented the bedrooms to homeless individuals. On the date of the incident, the defendant, Johnson, Cornelius Womack, Lyndell Obasiolu, and Gray were living at the house. Johnson testified that she, Gray, and Womack occupied the three bedrooms.

¶ 5 On June 21, 2021, Johnson and Obasiolu were consuming alcoholic beverages and watching television. At approximately 7 p.m., Gray entered the house and spoke with Johnson and Obasiolu for several minutes before leaving to go for a walk. When Gray returned, he sat with Johnson and Obasiolu and then went to his bedroom.

¶ 6 Later that night, the defendant entered the house through the backdoor, which was often unlocked. Johnson told the defendant to leave because he was not supposed to be there.[1] The defendant came in and out of the house three times that night before the defendant and Obasiolu exchanged harsh words. The defendant then "storm[ed]" out.

¶ 7 Early the next morning, Obasiolu awoke Johnson saying, "something's going on." Johnson heard Gray yell for help from Gray's bedroom. Johnson "kicked the door in," and saw Gray on the floor bleeding with the defendant on top of him holding a knife. Johnson physically restrained the defendant. The defendant was angry, threatened to stab Johnson, and attempted to continue stabbing Gray. Johnson took the knife from the defendant and restrained him until police arrived. Obasiolu had contacted the police with a life alert button. Obasiolu's testimony was largely

---

[1]Johnson stated that she had an order of protection against the defendant, which barred him from entering the house. However, the court indicated that there was no competent evidence of this fact and did not consider it.

2

consistent with Johnson's. Both witnesses testified that the incident occurred in Gray's bedroom and that the defendant was not supposed to be at the house.

¶ 8        Kankakee police officer Carly Small testified that she arrived at the scene and heard people yelling in a bedroom. Inside the bedroom, Small saw Gray lying face down on the floor, the defendant on top of Gray, and Johnson on top of the defendant. Officer Dalton Suprenant was already present when Small arrived. Suprenant told Johnson to get off the defendant. Johnson stood, handed Suprenant a knife, and left the room. The defendant began punching Gray in the face. The officers forced the defendant out of the room and restrained him with handcuffs. While being escorted to the squad car, the defendant stated, "that's what he gets, I hope I murdered him." The officers placed the defendant in Suprenant's squad car. Suprenant's testimony was largely consistent with Small's. Suprenant further testified he was aware that Gray had hit the defendant with a baseball bat on a previous occasion.

¶ 9        Footage recorded by a camera inside Suprenant's squad car was played for the court and admitted into evidence. It showed the defendant sitting alone in the squad car. The defendant yelled, "I was trying to kill his mother fucking ass. Son of a bitch. You know I was trying to kill you. *** I was trying to kill your mother fucking ass." The defendant then mocked Gray stating, "Oh not there. Ah, don't kill me. *** don't kill me. I'm sorry. I'm sorry, don't kill me." The defendant later stated, "you hit me with a bat, bitch, and you thought I wasn't gonna do nothing to you, you crazy, you mother fucker." The video showed the defendant continue to mock Gray, sing, and yell other statements indicating he intended to kill Gray and was upset about an incident involving a baseball bat.

¶ 10        The defendant gave a videotaped interview at the police station. Portions of the interview were played for the court and admitted into evidence. The defendant indicated that in the morning

3

on July 22, 2021, he took two knives from the kitchen to give Gray "a surprise for what he did to [him]." The defendant stated that as he was walking to the bathroom, Gray was standing in the doorway to Gray's bedroom, "talking shit. *** Said I wasn't shit. *** So I stabbed him in his mother fuckin' ass." The defendant later stated, "I was trying to kill him. *** He tried to kill me. He hit me [in the head] with a goddamn bat" several months prior. The defendant stated that one knife broke while he was stabbing Gray. The defendant did not indicate that Gray provoked him at the time of the incident or that he was acting in self-defense.

¶ 11 A butcher knife, butter knife, and knife handle were recovered from the scene. Gray suffered multiple stab wounds to his chest, the back of his right upper arm and neck, the left side of his upper back, the right side of his back, and the fingers on his right hand.

¶ 12 The defendant testified that Gray had previously assaulted him on two occasions. During the first incident, Gray struck the defendant in the head with a fence post as the defendant was riding a bicycle. The defendant ran inside the house and told Johnson to call the police. Approximately three months before the murder, Gray struck the defendant in the head with a baseball bat. The defendant ran to a nearby store, and Gray chased him. The police were called and the defendant was transported for medical attention.

¶ 13 The defendant testified that the morning of the murder, he exited his bedroom to go to the bathroom. He later clarified that it was not actually his bedroom, but a room he sometimes stayed in that no one was occupying. The defendant testified that Gray did not live in the house. As the defendant was walking to the bathroom, Gray exited his room to confront the defendant. The defendant returned to his room. Gray followed the defendant into the bedroom and shut the door. According to the defendant, Gray stated, "I'm gonna finish what *** I started out to do, I'm gonna kill your ass." Gray then punched the defendant in the face. The defendant feared for his life and

used a knife that was in his room to stab Gray. The defendant testified he only used the butcher knife.

¶ 14    The court took the matter under advisement before finding the defendant guilty of first degree murder on January 29, 2024. The court explained that it did not find the defendant credible. The defendant's testimony was contradicted by his previous statements, other witness's testimony, and physical evidence. The court believed that the defendant's statements made in the squad car and during the defendant's police interview more accurately explained what occurred the morning of the incident and provided the "clearest picture of intent in the mind of the defendant." The court found that the State proved beyond a reasonable doubt that the defendant's actions were not objectively reasonable. Further, the court found that Gray was not the initial aggressor, and instead, the evidence established that the defendant sought revenge against Gray for the baseball bat incident. The defendant was sentenced to 35 years' imprisonment.

¶ 15    While his posttrial motions were pending, the defendant mailed a letter to the court complaining about his attorney's representation. In the letter, the defendant alleged that counsel did not "bring up the issue of the damage that [Gray] did to [the] house," failed to make the defendant "aware of the sentence cap," "never talked things out with" the defendant, and only visited the defendant twice in three years. At a hearing on August 6, 2024, the court asked the defendant whether he wanted his complaints considered at that time. Defense counsel stated, "What the Judge is asking is, do you want to complain to the Court about the job I did, or do you want us to go forward with the other matters that are pending?" Counsel later stated, "if you decide you want to raise [your complaints] at another time, you can raise [them] at another time." The defendant confirmed he wanted to proceed with the other pending matters and would revisit his

complaints of counsel's performance later if necessary. The defendant's posttrial motions were denied on October 8, 2024, and the defendant appealed.

¶ 16                                                    II. ANALYSIS

¶ 17        On appeal, the defendant argues (1) the State failed to disprove beyond a reasonable doubt that he acted in self-defense, or in the alternative, his conviction should be reduced to second degree murder and (2) the court failed to conduct a preliminary *Krankel* inquiry. We consider each issue raised by the defendant in turn.

¶ 18                                                    A. Self-Defense

¶ 19        The defendant first argues the State failed to disprove beyond a reasonable doubt that he acted in self-defense. Once a defendant raises a claim of self-defense, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. *People v. Gray*, 2017 IL 120958, ¶ 50. The elements necessary to establish self-defense are:

> "(1) unlawful force threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied, and (6) the beliefs of the person threatened were objectively reasonable." *Id.*

See 720 ILCS 5/7-1 (West 2020). If the State negates any one of these elements, a defendant's self-defense claim cannot prevail. *Gray*, 2017 IL 120958, ¶ 50.

¶ 20        As with any other challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found beyond a reasonable doubt that the defendant did not act in self-defense. *People v.*

6

*Wilkinson*, 2018 IL App (3d) 160173, ¶ 36. We will not retry the defendant. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). The trier of fact "is not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt." *Id.* at 229. "[I]n a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *Id.* at 228. The circuit court is "in a much better position than are we to determine their credibility and the weight to be accorded their testimony." *Id.* at 229.

¶ 21    Here, even though the defendant testified that Gray confronted the defendant, threatened the defendant's life, and then punched the defendant, the court was not required to believe the defendant's testimony. See *People v. Purdle*, 212 Ill. App. 3d 594, 598 (1991). As the court found, the defendant's testimony was contradicted by his statements and actions following the incident. During the police interview, the defendant stated that the incident started because Gray was "talking shit" from the doorway to Gray's bedroom. The defendant took the knives from the kitchen to give Gray a "surprise" in retaliation for the baseball bat incident. The defendant repeatedly stated he intended to kill Gray, mocked Gray's attempt to plead for his life, and expressed anger over the baseball bat incident. The defendant did not mention any threat or assault by Gray at this time. There was no credible evidence presented that Gray was the initial aggressor.

¶ 22    The physical evidence and other testimony supported the court's finding. Johnson testified that the incident occurred in Gray's bedroom, not the defendant's. In fact, the defendant was not allowed at the house at that time. Further, Gray suffered multiple stab wounds to his back, including his neck and upper back. These wounds indicated that Gray was likely stabbed while facing away from the defendant. This is consistent with the officers' testimony that the defendant

7

was on top of Gray's back when they arrived. The recovery of a butcher knife, knife handle, and butter knife in Gray's bedroom further undermined the defendant's claim that he grabbed a knife that was in his bedroom after Gray suddenly attacked him. This evidence instead indicated that the defendant took the knives from the kitchen to attack Gray and one knife broke during the attack. Taking the evidence in the light most favorable to the State, a rational trier of fact could have determined that the defendant was the initial aggressor, negating an essential element of the defendant's self-defense claim.

¶ 23    In the alternative, the defendant argues that his conviction should be reduced to second degree murder if the defendant's subjective belief that he needed to defend himself was unreasonable. However, the only difference between justified use of force and imperfect self-defense is the nature of the defendant's belief, namely, whether the use of force was reasonable or unreasonable. See *People v. Hooker*, 249 Ill. App. 3d 394, 403 (1993). Because the State negated an essential element of the defense of imperfect self-defense—that the person threatened was not the aggressor—we reject the defendant's invitation to reduce his conviction.

¶ 24                            B. *Krankel* Inquiry

¶ 25    The defendant next argues that the court erred by failing to conduct a preliminary *Krankel* inquiry. The State confesses error. A defendant has the constitutional right to the effective assistance of counsel. U.S. Const. amends., VI, XIV; Ill. Const. 1970, art. I, § 8. If a defendant raises a *pro se* posttrial claim that he was denied his constitutional right to the effective assistance of counsel, the court must inquire further into the defendant's allegations. *Krankel*, 102 Ill. 2d at 189; *People v. Roddis*, 2020 IL 124352, ¶ 34.

> "Hearing those claims is a two-step process: (1) the circuit court makes a preliminary inquiry to examine the factual basis of the defendant's claim and (2) if

the allegations show possible neglect of the case, new counsel is appointed to represent the defendant in a full hearing on his *pro se* claims." (Internal quotation marks omitted.) *People v. Horman*, 2018 IL App (3d) 160423, ¶ 24. The defendant only needs to bring the claim to the court's attention to trigger a preliminary inquiry. *Id.* Failure to conduct an inquiry into the underlying factual basis of a defendant's posttrial claim of ineffective assistance of counsel is error and requires remand for the limited purpose of conducting an appropriate inquiry. *People v. Moore*, 207 Ill. 2d 68, 79 (2003).

¶ 26 Here, the defendant submitted a letter to the court complaining of his counsel's performance. After the court was made aware of the defendant's complaints, it was required to conduct an inquiry into the factual basis underlying the claims. The court erred when it failed to do so. Asking the defendant whether he wished to pursue his claims was not sufficient to discharge the court's obligation under *Krankel* and its progeny. We therefore accept the State's confession of error and remand for the limited purpose of conducting an inquiry into the factual basis underlying the defendant's claims.

¶ 27                                III. CONCLUSION

¶ 28 The judgment of the circuit court of Kankakee County is affirmed in part and remanded in part.

¶ 29 Affirmed in part and remanded in part.